CASE No. 935.

## IVY v. CLAWSON.

1. Testimony taken by plaintiff before the clerk under the act of 1872, (15 *Stat.* 41,) under an order made at chambers before suit commenced, is inadmissible upon the trial of the cause, although the original defendant, since deceased, had notice of the application for the order, and was present at the examination, and cross-examined the witness.
2. The Circuit judge may decree contrary to the findings of a jury upon an issue of fact submitted to them in a suit in equity.
3. The findings of fact by a Circuit judge, reversing the verdict of a jury on an issue ordered out of chancery, sustained by this court.

Before Pressley, J., York, April, 1879.

This was an action commenced June 21st, 1876, by James M. Ivy against W. I. Clawson, and after the death of defendant in 1877, revived against T. W. Clawson and C. E. Spencer, his executors. The prayer of the complaint was for an injunction to restrain the defendant from selling the property of the plaintiff, (who derived title through Sadler,) under an execution of W. I. Clawson against said Sadler.

The Circuit decree is as follows:

W. I. Clawson, having paid a debt as surety of L. P. Sadler, entered judgment for it against him on April 4th, 1867. He then owned real estate near Rock Hill, and, wishing to sell it free from encumbrance, he offered to pay Clawson fifty per cent. of said judgment in full satisfaction, which offer Clawson refused. On February 12th, 1869, Sadler sold his land to Kerr & Roach, who next day sold it to plaintiff for full value. He did not know of Clawson's judgment—never heard of it until 1876; but Kerr & Roach knew of it. They agreed with Sadler to settle for it with Clawson out of the price they were to pay Sadler and account to him for the remainder. Whether they ever made such settlement is not proved, and Kerr, who is supposed to have made it, is dead. The only proof of any payment by him to Clawson is a credit on his execution of $303.54, on September 2d, 1870, which refers to a receipt given to Kerr at same time. Clawson's answer states that the full terms of that settlement were inserted in said receipt, but it has not been offered in evidence.

At the time of the alleged settlement the executors of Blair held a large judgment against Sadler, and against Clawson as surety. This judgment was pressed against the latter, and he was compelled to pay it by a decree entered in .March, 1876. Just before that decree he commenced to renew his execution against Sadler, and the order for that was entered on April 8th, 1876. Soon after that plaintiff commenced this suit, and his first step was an order, May 17th, 1876, by Judge Mackey, at Lancaster, to take the testimony of Sadler, who was then very feeble, and soon after died. Clawson had notice of the application for said order, but did not appear when it was moved for; he, however, cross-examined Sadler when his testimony was

taken. It was ruled out as incompetent on the trial in this case, because Clawson had died before, and plaintiff excepted to that ruling.

The complaint in this case alleges that Clawson had agreed with Sadler to receive one-half of said judgment in full satisfaction, which sum he had paid; but Clawson had not satisfied the judgment, and was about to sell plaintiff's land to pay the same.

Defendant denies the alleged compromise; admits one which was to take effect in case he should not be required to pay any part of the Blair debt, and which had failed because he had been required to pay it.

The case was referred by Judge Mackey to a jury, which was to try the issue of fact whether there was an unconditional compromise or only one " upon condition." That issue was tried before Judge Aldrich, and the jury found for the plaintiff; but I see nothing in the testimony to sustain their verdict. There is no proof whatever of any compromise by Clawson, except the admission in his answer; nor is there a particle of proof of any payment on said judgment except his admission and the credit which he entered on his execution. That credit was nearly two years after the alleged compromise and the sale of the land by Sadler, and in February, 1876, he had due notice of the motion to renew the judgment and did not resist it. All these circumstances corroborate Clawson's answer, and would sustain it against pretty strong evidence to contradict it. I, therefore, cannot decree against it upon the mere verdict, which has no evidence to support it.

Plaintiff's prayer for injunction is refused; but Clawson's answer admits that his execution is subject to a deduction for a bill for supplies which Sadler held against him. The amount of that bill is not stated, but, added to the credit of September 2d, 1870, it would have made that payment one-half of the judgment debt. Let it be thus credited of that date, and then the executors of Clawson have leave to proceed on their execution for the remainder.

Plaintiff appealed.

*Mr. W. B. Wilson,* for appellant.

*Mr. J. S. R. Thomson,* contra.

November 5th, 1880.   The opinion of the court was delivered by

McGOWAN, A. J.   This was an action in the nature of a suit in equity to enjoin the sale of a tract of land (which the plaintiff held through L. P. Sadler) under an execution which W. I. Clawson, the testator of defendants, had against the said Sadler. The facts are so clearly stated in the Circuit decree that it will be unnecessary to repeat them here.   The plaintiff alleged that the judgment was settled by a compromise to take one-half in full satisfaction between Clawson, the plaintiff, and Sadler, the defendant in execution.   The question of the alleged compromise had been referred to a jury under an issue ordered at a previous term of the court, and the jury had found that issue for the plaintiff.   This verdict, as well as the whole testimony in the case, was considered by the Circuit judge, who held that there was nothing in the evidence to sustain the verdict, and refused to grant the injunction.   The plaintiff appeals to this court on the following exceptions:

"1. Because the verdict having been rendered before Judge Aldrich, and not set aside, was conclusive of the issue of fact tried, and it is respectfully submitted that Judge Pressley erred in discarding said verdict.

2. Because his Honor erred in excluding, as competent, the testimony of L. P. Sadler.

"3. Because the testimony of Sadler having been taken in the judicial proceeding under oath, in writing, and in the presence of W. I. Clawson, who cross-examined him, the testimony so given should not have been excluded on account of the subsequent death of Clawson.

"4. Because his Honor having held on the trial that there was sufficient evidence of consideration to support the compromise if the same was made, should have decreed in favor of the plaintiff."

The last exception is founded on a misapprehension of the decree.   The Circuit judge held nothing as to the consideration

of the alleged compromise. He held that there was no proof of any compromise except the answer of W. I. Clawson, which stated that it was conditional and the condition never performed.

*The second and third exceptions* relate to the exclusion of the depositions of L. P. Sadler as to transactions and communications between him and Clawson. Sadler and Clawson were both living at the time Sadler made his depositions, but at the time of the trial were both dead. If Sadler had been living at the time of the trial—Clawson being dead—the testimony would have been inadmissible, whether it was read from the depositions taken *de bene esse* or delivered orally by the witness himself. 1 *Greenl. on Ev.*, § 163. It is insisted, however, that *the death of Sadler* between the time the depositions were taken and the trial made them admissible. It will not be necessary to consider the question whether depositions competent at the time taken, but afterwards becoming incompetent by the death of one of the parties, will be again made competent by the death also of the witness. Aside from the objection to these depositions as obnoxious to the code, section 415, on account of the character of the testimony, they were not testimony at all. The record shows that they were taken under *an order* made at chambers, *before the suit was instituted* in which they were to be offered. They could not be regarded as testimony taken before the clerk under the act of 1872, (15 *Stat.* 41,) which authorizes testimony to be taken "in all civil causes or proceedings hereafter to be instituted or now pending or at issue, * * * upon the application of *either party to such cause or proceeding.*" That is clearly after such cause or proceeding has been instituted. The order was not a commission under the seal of the court "in a suit pending in the Court of Common Pleas." *Gen. Stat.* 511. Nor was that order a judgment in an action to perpetuate testimony, as no such case was made. The depositions, taken without proper authority, were, therefore, not testimony, and might, on motion, have been suppressed. Besides, the plaintiff really suffered no injury, for, while the depositions, as such, were rejected, the judge allowed Wallace, the clerk, to testify as to the substance of the depositions made before him as statements made by Sadler in the presence of Clawson. These exceptions are overruled.

*The first exception* is " that the verdict of the jury should have been regarded as conclusive of the issue referred." Since the abolition of the Court of Equity in this state and the adoption of the system of administering both law and equity by the same court there has been a tendency to confusion in regard to the modes of procedure appropriate to the new system. The constitution recognizes " chancery cases " as distinct from law cases, and for several reasons, and especially in view of the difference in the functions of this court in reviewing appeals in the two classes of cases, it is important that they should be kept separate and distinct. The code of procedure abolishes the distinction between actions at law and suits in equity, and declares that there shall be but one form of action. That, however, does not reach the underlying principles of equity, which are untouched, although the tribunal to administer them and the form of action are changed. The court and the judges being the same, and the jury always present, it requires an effort to avoid confounding the methods of proceeding in the two classes of cases. This is especially true in reference to the practice as to what was formerly called issues out of chancery to be tried before a jury in a law court. Feigned issues are abolished, but the same purpose is accomplished in another way. Simple orders for trial are substituted in their place. This court has lately had occasion to consider the subject in several cases, and has endeavored to settle the practice as near as may be in conformity with the practice of the late Court of Equity in this state. When a judge, sitting in what would have been called a suit in equity, orders an issue upon any question of fact, it is an interlocutory order made to enlighten his conscience, reserving the consideration of further questions in the cause until after the trial of the issue. That should be set down on what we may call the law side of the court, not as an ordinary case for a jury, but a submission, [see Rules of Circuit Courts, rule 28,] and the verdict should not be generally for plaintiff or for defendant, but specifically on the matter submitted, somewhat in the nature of a special verdict. The judge before whom the issue is tried does not hear a motion for a new trial, nor is judgment entered on the verdict, but it is reported, to be dealt with in connection with the whole case in

which the issue was ordered. The judge who hears it finally, sitting as Chancellor, is not required to regard the finding of the jury as conclusive of the fact submitted any more than he would the report of a referee, but, on the contrary, is bound to consider all the evidence in the whole case, including the finding and the evidence to support it, and pronounce his judgment accordingly. 2 *Daniell's Ch. Prac.* 1085 ; *Thomason* v. *Kennedy,* 3 *Rich. Eq.* 440 ; *Drayton* v. *Logan,* 3 *Strob. Eq.* 37, *note ; R. R. Co.* v. *Toomer,* 9 *Rich. Eq.* 270 ; *Sullivan* v. *Thomas,* 3 *S. C.* 547 ; *Flinn & Hart* v. *Brown,* 6 *S. C.* 209 ; *Gadsden* v. *Whaley,* 9 *S. C.* 147 ; *Sloan* v. *Westfield,* 11 *S. C.* 447 ; *C., C. & A. R. R. Co.* v. *Earle,* 12 *S. C.* 53. In the case last cited the court says : " The parties in what is commonly called an equity case, have a right to the opinion of the Circuit judge, notwithstanding his right to refer issues of fact to the jury for the purpose of enlightening his conscience, but the verdict of the jury is not to be accepted as the conclusion which is to control and govern the case, and through the medium of which the judgment is to be pronounced in favor of one side or the other."

Upon the merits we cannot say that the decree of the Circuit judge was wrong. The plaintiff was in no way deceived. He incautiously purchased land without inquiry, against which there was a judgment open in the office. That was constructive notice of its existence as it stood. When, years after, he heard of it he instituted this proceeding to enjoin the judgment, alleging that, although it stood open, it was in fact canceled by a verbal compromise between Clawson, the plaintiff, and Sadler, the defendant in execution. In this issue he held the affirmative and was bound to show that the judgment was satisfied, and that too against the *prima facies* arising from the existence of the record. What proof did he make? He knew nothing about it himself, and Sadler was estopped from denying the legal existence of the judgment, as he had allowed it to be renewed against him without objection in 1876, long after it is alleged he settled it. *Jackson* v. *Patrick,* 10 *S. C.* 197.

The Circuit judge says : " There is no proof whatever of any compromise by Clawson except the admission in his answer." And the answer which contained the admission of a conditional

S

promise stated "that R. M. Kerr well understood said agreement—taking a receipt for a payment made, *in which the terms of the agreement were expressed.*" That agreement, the only writing as to the terms of the promise, should have been produced or accounted for.

The Circuit decree is affirmed and the appeal dismissed.

McIVER, A. J., concurred.